UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FOREFRONT MANAGEMENT, LLC;           :
FOREFRONT DERMATOLOGY- EAST              Hon. Lewis A. Kaplan
PROFESSIONAL, LLC; and FOREFRONT      :   24-cv-8189 (LAK)
PHYSICIANS HOLDINGS, LLC

                                      :

              Plaintiffs,

                                      :

         v.

                                      :

IRENE J. VERGILIS-KALNER; ARKADY
KALYUZHNY; and SKIN CANCER &          :
AESTHETIC SURGERY, P.C.

                                      :

              Defendants.
-------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' PRE-TRIAL MOTION TO
<u>DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**


                         **JACOB LAUFER, P.C.**
                         65 Broadway, Suite 1005
                         New York, New York 10006
                         (212) 422-8500
                         *Attorneys for Defendants Irene J. Vergilis-*
                         *Kalner, Arkady Kalyuzhny, and Skin Cancer*
                         *& Aesthetic Surgery, P.C.*

Of Counsel:
      Jacob Laufer
      Mark Ellis
      Meryl Goldberg

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ......................................................................................................1

    A. The Complaint.................................................................................................1
        1. While this Motion Does Not Address the Falsity of the
           Complaint's Claims, It Is Important to Note How Far
           Afield Its Claims Are ...........................................................................4

    B. RICO Claims (CLAIMS 1-2: FDEPL and FML against
       Dr. Vergilis and Kalyuzhny) ..........................................................................4

    C. Other Causes of Action .................................................................................5

    D. There Is No Diversity....................................................................................6

ARGUMENT .............................................................................................................7

    A. LEGAL STANDARD....................................................................................7

    B. PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST
       EACH DEFENDANT (CLAIMS 1-2)...........................................................7

        1. RICO Claims Generally...........................................................................7

        2. Plaintiffs Lack Standing to Sue as Victims under RICO .....................9

            i. Plaintiffs Lack Standing to Assert RICO Claims as
              They Were Not "Immediate Victims" of the Alleged
              RICO Predicate Acts ...........................................................10

            ii. Plaintiffs' Asserted Distinct Injury Does Not Satisfy
              RICO's Direct Damages Requirement ..................................13

            iii. Plaintiffs' Allegation of an Additional Goal Does Not Satisfy
              Directness of Damages .......................................................13

iv. The Alleged Breaches of Contract Do Not Add to the
Analysis of RICO Standing ...................................................................14

3. The Complaint's Claims Are a Disguised Securities Fraud
Allegation, Requiring Dismissal of Those Claims .............................................17

i.  Securities Transactions Cannot Be RICO Predicate Acts ....................17

ii. The Core Allegation, Albeit Unalleged, Is Securities Fraud................18

4. Plaintiffs Do Not Adequately Allege a §1962(d) RICO Conspiracy.................20

C. COMMON LAW CLAIMS SHOULD BE DISMISSED FOR
FAILURE TO STATE A CLAIM (REGARDING CLAIMS 3-8).............................22

1. New York Does Not Recognize Civil Conspiracy Claims (CLAIM 7).............22

2. The Claims for Breach of a Fiduciary Duty Should Be
Dismissed (CLAIMS 5 & 6) ......................................................................23

a. The Claim for Violation of Her Fiduciary Duty Against
Dr. Vergilis (CLAIM 5) Should Be Dismissed....................................23

b. The Claims for Violations of Fiduciary Duties Against Dr.
Vergilis and Kalyuzhny (CLAIMS 5 & 6) Should Be Dismissed ........25

3. The Declaratory Judgment Claim Is Duplicative (CLAIM 8) ..........................27

4. Striking Damage Requests..............................................................................27

i. Plaintiffs Are Not Entitled to Punitive Damages
(CLAIMS 5-7) ......................................................................................27

D. THE COMPLAINT SHOULD BE DISMISSED FOR LACK
OF SUBJECT MATTER JURISDICTIONTHE COURT
SHOULD EXERCISE ITS DISCRETION TO DISMISS.............................28

E. THE COURT SHOULD EXERCISE ITS DISCRETION TO
DISMISS THE STATE LAW CLAIMS (CLAIMS 3-8) ............................33

CONCLUSION ............................................................................................33

# **TABLE OF AUTHORITIES**

**CASES:**                                                                                                        **PAGE(S)**

*A Priori Fam. Off., LLC v. Valley Forge Ins. Co.,*
2023 WL 8188668 (D. Conn. Nov. 27, 2023) ..............................................................29

*AA Med., P.C. v. Keane,*
83 Misc.3d 133(A), 2024 WL 4096659 (2d Dept. 2024) ...........................................26

*Advani Enterprises, Inc. v. Underwriters at Lloyds,*
140 F.3d 157 (2d Cir. 1998)........................................................................................30

*Alexander & Alexander of New York, Inc. v. Fritzen,*
68 N.Y.2d 968 (1986) ..................................................................................................22

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,*
821 F.3d 352 (2d Cir. 2016).................................................................................. 10 FN12

*Anza v. Ideal Steel Supply Corp.,*
547 U.S. 451, 126 S.Ct. 1991 (2006)......................................................................11, 13

*Araujo v. John Hancock Life Ins.,*
206 F.Supp.2d 377 (E.D.N.Y. 2002) ..........................................................................18

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009).............................................................................7

*Associated Gen. Contractors v. Carpenters,*
459 U.S. 519, 103 S.Ct. 897 (1983).............................................................................14

*Azima v. Dechert LLP,*
2024 WL 4665106 (S.D.N.Y. Sept. 26, 2024).............................................................15

*Baisch v. Gallina,*
346 F.3d 366 (2d Cir. 2003).........................................................................................12

*Baylis v. Marriott Corp.,*
843 F.2d 658 (2d Cir. 1988)................................................................................. 33 FN26

*BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon,*
43 F.Supp.2d 359 (S.D.N.Y. 1999) ................................................................................ 12 FN13

*Beach v. Touradji Cap. Mgmt., LP,*
224 A.D.3d 470 (1st Dept. 2024)............................................................................................26

*Beck v. Prupis,*
529 U.S. 494, 120 S.Ct. 1608 (2000)......................................................................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955 (2007).......................................................................................7

*Bermudez v. Colgate-Palmolive Co.,*
667 F.Supp.3d 24 (S.D.N.Y. 2023). .........................................................................................7

*Bona v. Barasch,*
2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) ................................................................ 12 FN13

*Bonadio v. PHH Mortg. Corp.,*
2014 WL 522784 (S.D.N.Y. Jan. 31, 2014) ............................................................................22

*Bridge v. Phoenix Bond & Indem. Co.,*
553 U.S. 639, 128 S.Ct. 2131 (2008)................................................................................ 14 FN14

*Burdick v. Am. Exp. Co.,*
677 F.Supp. 228 (S.D.N.Y. 1988), *aff'd*, 865 F.2d 527 (2d Cir. 1989) ............................. 15 FN15

*Carco Grp., Inc. v. Maconachy,*
718 F.3d 72 (2d Cir. 2013)......................................................................................................24

*Castellano v. Bd. of Trustees,*
937 F.2d 752 (2d Cir. 1991).....................................................................................................33

*Catskill Litig. Trust v. Park Place Entm't Corp.,*
169 F. App'x 658 (2d Cir. 2006) .......................................................................................... 29-30

*Chauca v. Abraham,*
30 N.Y.3d 325 (2017) ..............................................................................................................24

*Cohen v. Postal Holdings, LLC,*
873 F.3d 394 (2d Cir. 2017).............................................................................................. 33 FN26

i

*Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC,*
2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ................................................................. 8

*Corniel v. Titech,*
2020 WL 1480448 (E.D.N.Y. Mar. 6, 2020), *r&r adopted,*
2020 WL 1472442 (E.D.N.Y. Mar. 26, 2020) ............................................................... 32

*Decter v. Second Nature Therapeutic Program, LLC,*
42 F.Supp.3d 450 (E.D.N.Y. 2014) ................................................................................ 23

*DeMartino v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP,*
189 A.D.3d 774 (2d Dept. 2020) ................................................................................... 25

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006) .......................................................................................... 10

*Discon, Inc. v. NYNEX Corp.,*
93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds,*
525 U.S. 128, 119 S.Ct. 493 (1998) .............................................................................. 20

*Elsevier Inc. v. W.H.P.R., Inc.,*
692 F.Supp.2d 297 (S.D.N.Y. 2010) ............................................................................. 21

*Emmet & Co. v. Catholic Health E.,*
49 Misc.3d 1058 (Sup. Ct. N.Y. Co. 2015) .................................................................. 28

*Empire Merchants, LLC v. Reliable Churchill LLLP,*
902 F.3d 132 (2d Cir. 2018) ............................................................................ 12-14, FN14

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
385 F.3d 159 (2d Cir. 2004) .................................................................................. 20-21, 33

*First Nationwide Bank v. Gelt Funding Corp.,*
27 F.3d 763 (2d Cir. 1994) ................................................................................ 10, 17 FN16

*Gallop v. Cheney,*
642 F.3d 364 (2d Cir. 2011) ............................................................................................. 7

*Gerstenfeld v. Nitsberg,*
190 F.R.D. 127 (S.D.N.Y. 1999) ................................................................................... 8-9

*Giuffre v. Metro. Life Ins. Co.,*
129 F.R.D. 71 (S.D.N.Y. 1989) ............................................................................. 15 FN15

*Glen-Arden Commodities, Inc. v. Costantino,*
493 F.2d 1027 (2d Cir. 1974)..................................................................................................19

*Goldfine v. Sichenzia,*
118 F.Supp.2d 392 (S.D.N.Y. 2000)........................................................................................8

*Gross v. Waywell,*
628 F.Supp.2d 475 (S.D.N.Y. 2009).........................................................................................8

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,*
213 F.3d 48 (2d Cir. 2000)......................................................................................................30

*Haviland v. J. Aron & Co.,*
796 F.Supp. 95 (S.D.N.Y. 1992), *aff'd*, 986 F.2d 499 (2d Cir. 1992) ................................ 15 FN15

*Hecht v. Com. Clearing House, Inc.,*
897 F.2d 21 (2d Cir. 1990).....................................................................................................10

*Hemi Group, LLC v. City of New York,*
559 U.S. 1, 130 S.Ct. 983 (2010)............................................................................................11

*Herman v. Branch Motor Exp. Co.,*
67 Misc.2d 444 (Civ. Ct. N.Y. Cty. 1971)..............................................................................27

*Holmes v. Secs. Investor Prot. Corp.,*
503 U.S. 258, 112 S.Ct. 1311 (1992).................................................................................10-11

*Hoosick Falls Assoc. v. St.-Gobain Performance Plastics Corp.,*
2016 WL 9995519 (N.D.N.Y. Oct. 31, 2016) .......................................................................30

*Hylan Electrical Contracting, Inc. v. MasTec North America, Inc.,*
74 A.D.3d 1148 (2d Dept. 2010) ............................................................................................23

*In re Am. Exp. Co. Shareholder Litig.,*
39 F.3d 395 (2d Cir. 1994)......................................................................................................10

*In re Platinum-Beechwood Litig.,*
377 F.Supp.3d 414 (S.D.N.Y. 2019).......................................................................................19

*In re Platinum-Beechwood Litig.,*
427 F.Supp.3d 395 (S.D.N.Y. 2019).......................................................................................22

iii

*In re Sumitomo Copper Litigation,*
995 F.Supp. 451 (S.D.N.Y. 1998) ..................................................................................8

*JGIAP RH 160 LLC v. CRI Holding Corp.,*
2023 WL 5979125 (E.D.N.Y. Aug. 16, 2023), *r&r adopted,*
2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023) ..............................................................21

*Jordan (Bermuda) Inv. v. Hunter Green Inv.,*
205 F.Supp.2d 243 (S.D.N.Y. 2002)...........................................................................17

*Kalimantano GmbH v. Motion in Time, Inc.,*
939 F.Supp.2d 392 (S.D.N.Y. 2013)..............................................................................8

*Kaminsky v. FSP Inc.,*
5 A.D.3d 251 (1st Dept. 2004)....................................................................................23

*Kelly v. Vesnaver,*
2018 WL 1054827 (E.D.N.Y. Jan. 11, 2018). ................................................... 30 FN24

*Kenshoo, Inc. v. Aragon Advert., LLC,*
586 F.Supp.3d 177 (E.D.N.Y. 2022) ...........................................................................29

*Knoll v. Schectman,*
275 F.App'x 50 (2d Cir. 2008) ....................................................................................20

*Laborer's Local 17 Health and Benefit Fund v. Philip Morris, Inc.,*
191 F.3d 229 (2d Cir. 1999)................................................................................. 11-12

*Legion Lighting Co. v. Switzer Grp., Inc.,*
171 A.D.2d 472 (1st Dept. 1991)...............................................................................22

*Lerner v. Fleet Bank, N.A.,*
318 F.3d 113 (2d Cir. 2003)................................................................................. 10-11

*Levinson v. PSCC Servs., Inc.,*
2009 WL 5184363 (D. Conn. Dec. 23, 2009)....................................................... 17-18

*Ling v. Deutsche Bank,*
2005 WL 1244689 (S.D.N.Y. May 26, 2005) ...............................................................18

*Lundy v. Catholic Health Sys. of Long Island Inc.,*
711 F.3d 106 (2d Cir. 2013)........................................................................... 33 FN26

iv

*Martinez v. Barasch,*
2004 WL 1555191 (S.D.N.Y. July 12, 2004) .................................................................... 12 FN13

*McSpedon v. Levine,*
158 A.D.3d 618 (2d Dept. 2018) ................................................. 25

*Moss v. BMO Harris Bank, N.A.,*
258 F.Supp.3d 289 (E.D.N.Y. 2017) ................................................. 8

*MLSMK Inv. v. JP Morgan Chase & Co.,*
651 F.3d 268 (2d Cir. 2011) ................................................. 17

*Nasik Breeding & Research Farm v. Merck & Co.,*
165 F.Supp.2d 514 (S.D.N.Y. 2001) ................................................. 22

*Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.,*
420 F.Supp.2d 253 (S.D.N.Y. 2006) ................................................. 21

*O'Callaghan v. New York Stock Exch.,*
2013 WL 3984887 (S.D.N.Y. Aug. 2, 2013), *aff'd,*
563 F.App'x 11 (2d Cir. 2014) ................................................. 15 FN15

*Optanix, Inc. v. Alorica Inc.,*
2021 WL 2810060 (S.D.N.Y. July 6, 2021) ................................................. 27

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC,*
83 A.D.3d 804 (2d Dept. 2011) ................................................. 25

*Panix Promotions, Ltd. v. Lewis,*
2002 WL 72932 (S.D.N.Y., Jan. 17, 2002) ................................................. 8-9

*People v. Yannett,*
49 N.Y.2d 296 (1980) ................................................. 25 FN20

*Platinum-Montaur Life Scis., LLC,*
943 F.3d at 619 (2d Cir. 2019) ................................................. 32

*Plymouth Drug Wholesalers, Inc. v. Kirschner,*
239 A.D.2d 479 (2d Dept. 1997) ................................................. 22

*Pollak v. Moore,*
85 A.D.3d 578 (1st Dept. 2011) ................................................. 23

*Premium Merchant Funding 18, LLC v. Honan,*
2024 WL 4931940 (S.D.N.Y. Dec. 2, 2024) ............................................................... 16-17 FN16

*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
851 F.3d 1218 (11th Cir. 2017) .................................................................................32

*Purgess v. Sharrock,*
33 F.3d 134 (2d Cir. 1994)........................................................................................33

*Recovery Racing, LLC v. Abate,*
16 Misc.3d 1122(A), 2007 WL 2302451 (Sup. Ct. Nassau Cty 2007).............................. 25 FN20

*Reich v. Lopez,*
38 F.Supp.3d 436 (S.D.N.Y. 2014), *aff'd,* 858 F.3d 55 (2d Cir. 2017) ................................. 21-22

*Rut v. Young Adult Inst., Inc.,*
74 A.D.3d 776 (2d Dept. 2010) ...........................................................................23, 25

*Salvatore's Italian Gardens, Inc. v. Hartford Fire Ins. Co.,*
547 F.Supp.3d 299 (W.D.N.Y. 2021) ...................................................................... 28 FN23

*SEC v. Coinbase, Inc.,*
726 F.Supp.3d 260 (S.D.N.Y. 2024)...........................................................................20

*SEC v. Edwards,*
540 U.S. 389, 124 S.Ct. 892 (2004)...........................................................................19

*SEC v. W.J. Howey Co.,*
328 U.S. 293, 66 S.Ct. 1100 (1946)........................................................................ 19-20

*Sedima, S.P.R.L. v. Imrex Co.,*
473 U.S. 479, 105 S.Ct. 3275 (1985)................................................................... 10, 15-16

*Spiteri v. Russo,*
2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom., Spiteri v. Camacho,*
622 F.App'x 9 (2d Cir. 2015) ...................................................................................16

*Stechler v. Sidley, Austin Brown & Wood, LLP,*
382 F.Supp.2d 580 (S.D.N.Y. 2005)...........................................................................18

*Stevenson v. Thornburgh,*
2024 WL 645187 (S.D.N.Y. Feb. 14, 2024)............................................................ 18, FN18

*Thermoset Corp. v. Building Materials Corp of America,*
849 F.3d 1313 (11th Cir. 2017) ..................................................................32

*Thomas v. Farrago,*
154 A.D.3d 896 (2d Dept. 2017) ..............................................................28

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,*
612 F.Supp.2d 267 (S.D.N.Y. 2009)..........................................................17

*Thor Equities, LLC v. Hiscox Ins. Co. Inc.,*
2022 WL 5196111 (S.D.N.Y. Oct. 5, 2022) .............................................32

*Total Auto., Inc. v. Supply Line Int'l, LLC,*
2016 WL 7476337 (D. Minn. Dec. 29, 2016)................................... 31 FN25

*Town of West Hartford v. Operation Rescue,*
915 F.2d 92 (2d Cir. 1990).................................................................... 7-8

*United States Liab. Ins. Co. v. M Remodeling Corp.,*
444 F.Supp.3d 408 (E.D.N.Y. 2020) ....................................................29-31

*Veritas Capital Mgmt. L.L.C. v. Campbell,*
22 Misc.3d 1107(A) (Sup. Ct. N.Y. Cty 2008)..........................................23

*William Kaufman Org., Ltd. v. Graham & James LLP,*
269 A.D.2d 171 (1st Dept. 2000)...........................................................23-24

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.,*
2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) .......................................20-21

*Zanghi v. Ritella,*
2021 WL 4392756 (S.D.N.Y. Sept. 24, 2021)..........................................18

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC,*
286 F.Supp.3d 634 (S.D.N.Y. 2017)................................................ 18 FN17

## STATUTES AND REGULATIONS:

15 U.S.C. §78.........................................................................................17

18 U.S.C. §1962........................................................................... *passim*

18 U.S.C. §1964 ................................................................................................ 7 FN9

28 U.S.C. §1331 ................................................................................................ 28-31

28 U.S.C. §1332 ................................................................................................ 28, 32

28 U.S.C. §1367 ................................................................................................ 33

28 U.S.C. § 2201 .............................................................................................. 28 FN23

Fed.R.Civ.P. 7.1 .............................................................................................. 6 FN8, 28

Fed.R.Civ.P. 9(b) ............................................................................................ 8

Fed.R.Civ.P. 12(b) .......................................................................................... 7, 28

Fed.R.Civ.P. 60 ............................................................................................... 32

https://pubmed.ncbi.nlm.nih.gov/8176010/ ..................................................... 4-5 FN7

Securities Exchange Act of 1934 §10(b) ......................................................... 17 FN18

## PRELIMINARY STATEMENT

Defendants Irene J. Vergilis-Kalner ("Dr. Vergilis"), Arkady Kalyuzhny ("Kalyuzhny") (together the "Individual Defendants"), and Skin Cancer & Aesthetic Surgery, P.C. ("SCAS") respectfully submit this memorandum in support of their motion to dismiss the amended complaint ("Complaint") filed by Plaintiffs Forefront Management, LLC ("FML"), Forefront Dermatology – East Professional, LLC ("FDEPL"), and Forefront Physicians Holdings, LLC ("FPHL").

The Complaint fails to state a claim under the civil RICO statutes; it fails to state a claim for several state law causes of action as well. Since the RICO causes of action and an ineffectual claim of diversity jurisdiction are the only bases for jurisdiction in this Court, it follows that the Complaint should be dismissed, and the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims.

## BACKGROUND

### A.      The Complaint

This case stems from Plaintiffs' purchase of Defendant SCAS, a dermatology practice, from Dr. Vergilis. The essence of the Complaint is that the purchase price was a function of SCAS's income, but that income was allegedly inflated by false medical insurance claims that SCAS had submitted to third-party insurers.

The core of the Complaint comprises two breach of contract claims: (a) the asset purchase agreement (3rd claim), and (b) Dr. Vergilis's employment agreement (4th claim).

Upon these breach of contract allegations, Plaintiffs have artificially planted: two breach of fiduciary duty claims against Dr. Vergilis and Kalyuzhny, respectively (5th and 6th claims) and a declaratory judgment claim (8th claim) that should be dismissed under New York law as

duplicative of the breach of contract claims, and finally a claim for civil conspiracy (7th claim) which is not recognized under New York law.

And based upon these same breach of contract claims, in a transparent effort to artificially manufacture access to federal court and increase potential damages, Plaintiffs have contrived two RICO claims (1st and 2nd claims), predicated on wire fraud predicate acts, allegedly committed against third-party insurance payor-victims.

The Complaint, whose factual allegations (if well-pleaded) are presumed true for this motion, alleges that Plaintiffs, collectively a large-scale multi-state organization that acquires and manages dermatology practices, purchased SCAS, a local dermatology practice. *See* Complaint ¶¶7, 43-47.[1]

In November 2022, Plaintiffs entered into an Asset Purchase Agreement with SCAS and Dr. Vergilis (the "Agreement"), relying upon representations regarding SCAS's income and compliance with legal requirements. *Id.* ¶¶4-7, 524.[2] However, the Complaint alleges that SCAS was unlawfully overbilling third-party payors through various means (such as overstating procedures and "churning" patient visits via diagnosis "cycling.") *Id.* ¶¶3, 87-89, 97-151. It alleges that Defendants overbilled to collect extra income from insurance companies and patients and for a tertiary purpose of enhancing SCAS's sales price for eventual sale. *Id.* ¶¶87, 89-91.[3]

The Complaint alleges that Plaintiffs would not have paid approximately $25,000,000 in

---

[1]    SCAS, formed by Dr. Vergilis in 2011, consisted of five New York clinics. *Id.* ¶¶43, 46.

[2]    Plaintiffs paid $19,670,000 in cash, provided 50,000 of FPHL's Class B Common Units for the purchase, and contractually employed the Individual Defendants. *Id.* ¶526.

[3]    The Complaint alleges the first goal of the alleged fraudulent activity was to generate extra income from patient co-pays; the second goal was to collect excess insurance payments; and the third goal was to sell SCAS at an inflated price. *Id.* ¶¶ 89-91.

cash and equity (*id*. ¶¶8, 557-558) if they knew that "over 20% of SCAS's billings were tainted with fraud" (*id*. ¶175),[4] which Dr. Vergilis and SCAS expressly denied. *Id*. ¶¶528-529. It alleges that four months after the Agreement, in March 2023, following their "access to SCAS's full claims data and universe of coding procedures," Plaintiffs conducted an audit that uncovered the allegedly fraudulent activity, ended that activity, and suffered financial losses. *Id*. ¶¶561-565.

Plaintiffs terminated the Individual Defendants' employment in August 2023. *Id*. ¶575. Plaintiffs informed Dr. Vergilis that her share interest in Plaintiff-entities – the 50,000 FPHL share units valued at approximately $5,000,000 which was part of the purchase price – was cancelled. *Id*. ¶¶633, 635.

The Complaint asserts that Plaintiffs' search for a replacement doctor was difficult because staff members and patients spoke Russian and, implausibly, they could not find a Russian-speaking dermatologist. *Id*. ¶¶578-580. Then, rather than replacing the Individual Defendants, Plaintiffs closed SCAS's practice and terminated SCAS's employees. *Id*. ¶¶581-583.

Plaintiffs then commenced this RICO action demanding over $60,000,000 including losses[5] and treble civil RICO damages. *Id*. ¶653.

---

[4]    This "estimate" apparently derives from an evaluation - of claims over an undefined period billed to Medicare only - of *professional medical services* by Plaintiffs' "coding and billing team," rather than by medical professional-experts. *Id*. ¶¶570-571. This conclusory allegation is not supported by details of the methodology of their review.

[5]    Alleged losses include: the purchase price for SCAS; fees to investigate and correct the damage including approximately $70,000 for an external investigation (*id*. ¶568), $30,000 in internal investigation fees (*id*. ¶612), $245,000 in reimbursing Medicare overpayments (*id*. ¶615), and $50,000 for legal fees related to remediation. *Id*. ¶614. Plaintiffs also approximate $527,000 losses associated with the closing of the practice. *See generally, id*. ¶¶610-622.

### 1.    While this Motion Does Not Address the Falsity of the Complaint's Claims, It Is Important to Note How Far Afield Its Claims Are

Recognizing that on this motion to dismiss the Complaint's allegations are to be accepted as true, nevertheless we are compelled to make several preliminary observations. Plaintiffs, while noting alleged record keeping lapses among the many thousands of SCAS's patient visits, devote 10 pages of the Complaint to demonstrate fraud by the purported statistical anomaly— supported by charts[6]—that nearly all of the patients seen by Dr. Vergilis were "complex," or that patients had extraordinarily large numbers of lesions. In doing so, they have ignored that Brighton Beach is a beachfront location, heavily populated by elderly Soviet emigres, who regularly frequent the beach and its sunlight, and many of whom were victims of the Chernobyl radioactive contamination accident that caused "long lasting, serious diagnostic and therapeutic problems," "including radiation-induced lesions [that] were confined primarily to the legs and distal arms, but sometimes involved up to 50% of the total body surface."[7]

It also ignores the obvious reality that with SCAS's team of clinicians, including nurse practitioners, Dr. Vergilis, based upon the nature of her surgical practice, her high degree of training, and the number of her geriatric patients, would have virtually exclusively devoted her valuable time to seeing patients with "complex" problems.

### B.    RICO Claims (CLAIMS 1-2: FDEPL and FML against Dr. Vergilis and Kalyuzhny)

The Complaint alleges that SCAS, a medical dermatology practice, was an unlawful

---

[6]    These charts invoke the adage attributed to Mark Twain that "There are three kinds of lies: lies, damned lies, and statistics," which highlights the unreliable nature of statistical arguments.

[7]    "In addition . . . telangiectases, radiation keratoses, and radiation ulcers, hemangiomas, hematolymphangiomas, splinter hemorrhages in the distal nail bed, lentiginous hyperpigmen-

RICO enterprise, (*id.* ¶¶3, 170, 646), and that the pattern of racketeering activity comprised predicate acts of wire fraud involving SCAS overbilling third-party insurance claims and patients' copays. *Id.* ¶¶648-653, 658.

It alleges that the two Individual Defendants were the enterprise's managerial team, and the other members participating in the enterprise were employees of SCAS. *Id.* ¶¶3, 97-152, 648.

It alleges instances of allegedly false billing as early as 2019 and as late as October 2022. *See e.g.*, *id.* ¶¶230, 385.

The Complaint alleges that the Individual Defendants conspired to conduct the pattern of overbilling, and then induced Plaintiffs to purchase SCAS at an inflated price by not disclosing the overbilling. *Id.* ¶¶651-658.

As shown below, the RICO causes of action are flawed in multiple ways. A core flaw is lack of RICO proximate causation of damages to the Plaintiffs because the alleged racketeering acts were directed at third-parties. Additionally, among other flaws, the Complaint fails to support with the required particularity that SCAS, a legitimate medical practice, engaged in the <u>pattern</u> of unlawful acts mandated by RICO.

The Complaint's allegations are ordinary breach of contract claims that Plaintiffs bootstrap into RICO claims to contrive federal jurisdiction and a larger damages claim.

### C.    Other Causes of Action

The Complaint further alleges a breach of contract claim for breach of the Agreement (FML and FDEPL) against SCAS and Dr. Vergilis (*id.* ¶¶659-665), a breach of contract claim (FDEPL) against Dr. Vergilis for breach of her employment agreement (*id.* ¶¶666-671), a breach of fiduciary duty claim (FDEPL) against Dr. Vergilis (*id.* ¶¶672-676), a breach of fiduciary duty

---

tation, and severe subcutaneous fibrosis were noted." https://pubmed.ncbi.nlm.nih.gov/8176010/

claim (FML) against Kalyuzhny (*id.* ¶¶677-681), a civil conspiracy claim (all Plaintiffs) against

Individual Defendants (*id.* ¶¶682-686), and a declaratory judgment request (FPHL) against

SCAS and Dr. Vergilis (requesting cancelling the Agreement's FPHL equity transfer *id.* ¶¶687-

692).

There is no claim for common law fraud. And all of the state law claims are variations

on, and duplicative of, the contract claims.

### D.    There Is No Diversity Jurisdiction

Plaintiffs provide states, but not names of members of the Plaintiff LLCs.[8] *Id.* ¶¶ 32-34.

The Complaint acknowledges that Plaintiff FPHL issued Defendant SCAS membership

units, which have significant value. *Id.* ¶¶551, 526. The Complaint admits that this membership

has significant financial value. *Id.* ¶526. SCAS thus became a member of Plaintiff FPHL.

The Complaint claims that SCAS is no longer a member of Plaintiff FPHL because it

unilaterally revoked SCAS's membership and removed SCAS's membership on its books and

records. *Id.* ¶633. But, as the Complaint itself acknowledges, SCAS contends that its interest was

improperly cancelled and that it is a member of Plaintiff FPHL, and SCAS's membership in

Plaintiff will only be resolved at the conclusion of this case.

For the reasons stated below, the Complaint should be dismissed because the RICO

claims fail to state a cause of action, diversity jurisdiction is lacking, and most of the state law

claims are subject to dismissal as well. And, this Court should not, in the exercise of its

discretion, exercise supplemental jurisdiction over any remaining state law claims.

---

[8]    Plaintiffs did not provide any such information in the 7.1 Disclosure form and did not supplement it when the amended complaint added a diversity jurisdiction basis for subject matter jurisdiction.

## ARGUMENT

### A.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citations omitted); Fed.R.Civ.P. 12(b)(6). Allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007). "[W]ell-pleaded factual allegations" are accepted as true, but courts should not accept as true "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. at 1949-50. "[C]onclusory, vague, or general allegations," supported by only "speculation and conjecture," cannot withstand a motion to dismiss. *Gallop v. Cheney*, 642 F.3d 364, 368–69 (2d Cir. 2011). Defective statistical or scientific analyses do not lend facial plausibility to a complaint's allegations. *Cf. Bermudez v. Colgate-Palmolive Co.*, 667 F.Supp.3d 24, 37 (S.D.N.Y. 2023).

### B.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST EACH DEFENDANT (CLAIMS 1-2)

#### 1.    RICO Claims Generally

To state a claim for a violation of RICO,[9] a plaintiff must allege: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an

---

[9]    18 U.S.C. §1962(c) makes it unlawful: "[F]or any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. §1962(d) makes it unlawful "for any person to conspire to violate" §1962(c). Any person "injured in his business or property by reason of a violation of section 1962" may sue for damages and injunctive or other relief. §1964(c).

'enterprise' (7) the activities of which affect interstate or foreign commerce." *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir. 1990) (citation omitted).

"Courts have described civil RICO as an unusually potent weapon—the litigation equivalent of a thermonuclear device. . . . Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation. . . . Indeed, although civil RICO may be a potent weapon, plaintiffs wielding RICO almost always miss the mark." *Moss v. BMO Harris Bank, N.A.*, 258 F.Supp.3d 289, 297 (E.D.N.Y. 2017) (citations & internal quotation marks omitted); *see also, Kalimantano GmbH v. Motion in Time, Inc.*, 939 F.Supp.2d 392, 407 (S.D.N.Y. 2013) (the "Court has a duty to critically assess RICO claims at the threshold, to assure that a plaintiff's claim of a RICO violation is not used improperly as a club to bludgeon settlement or surrender..."); *Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 394 (S.D.N.Y. 2000) (courts regularly encounter "garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into a vehicle for treble damages…")

RICO claims for mail and wire fraud are subject to the stricter pleading requirements for all allegations of fraud under Fed.R.Civ.P. 9(b). *In re Sumitomo Copper Litigation*, 995 F.Supp. 451, 455–56 (S.D.N.Y. 1998).

And where RICO claims are based on mail and wire fraud, "close scrutiny" "is merited," *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *4 (S.D.N.Y. Apr. 12, 2012), because "the potential for transforming garden-variety common law actions into federal cases is greater if grounded entirely on these predicates." *Gross v. Waywell*, 628 F.Supp.2d 475, 493 (S.D.N.Y. 2009); *see Panix Promotions, Ltd. v. Lewis*, 2002 WL 72932, at *9-10 (S.D.N.Y., Jan. 17, 2002) (alleged breach of contract is not an injury contemplated

under RICO, and cannot be pursued under the lucrative RICO statute); *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 132 (S.D.N.Y. 1999) (disguised contract claim cannot sustain RICO claim).

This case is emblematic of why courts rigorously review RICO cases based on wire fraud and dismiss them at an early stage. The Complaint's factual allegations present ordinary breaches of contract claims - that are contested and subject to fact finding and expert testimony - and transmogrify those allegations into Plaintiffs' wire fraud-based RICO claims.

### 2.    Plaintiffs Lack Standing to Sue as Victims under RICO

Plaintiffs lack standing because their alleged damages were not proximately caused by Defendants' alleged RICO activity. The Complaint alleges the following chain of events: (1) Defendants committed wire fraud by submitting false insurance claims;[10] (2) insurers and patients were harmed by overpaying and paying co-payments on such claims (the alleged first and second goal of the enterprise); (3) then, in connection with the Agreement, Defendants presented to Plaintiffs financial information inflated by those overpayments; and (4) Plaintiffs detrimentally relied on those statements when FML purchased overvalued assets.

As alleged in the Complaint, Plaintiffs (and particularly FDEPL)[11] are not the immediate or direct victims of the RICO predicate acts, nor are they the party best situated to bring suit for those predicate acts. Plaintiffs' effort to allege that damaging Plaintiffs was a third goal of the enterprise is hollow and tries to circumvent the obvious fact and legal impediment that Plaintiffs

---

[10]    The Complaint also alleges that Defendants also generated revenue from patients based on the same alleged wrongful activity. Complaint ¶¶ 88-89. But here again, Plaintiffs are not the direct or immediate victim of the alleged wrongs.

[11]    The RICO claims are brought by FML and FDEPL, but only FML was the Agreement's "Buyer," and FDEPL is identified in the Agreement "solely for the purpose of acknowledging the transfer of the Clinical Assets to it." Complaint Exhibit 1, p. 1. Thus, even at the outset, FDEPL lacks RICO standing.

were not directly harmed by the alleged scheme's racketeering acts. Based on Plaintiffs' lack of RICO standing, the RICO claims should be dismissed.

> **i.    Plaintiffs Lack Standing to Assert RICO Claims as They Were Not "Immediate Victims" of the Alleged RICO Predicate Acts**

A civil RICO plaintiff must demonstrate "RICO standing," *i.e.,* he must have been "injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285 (1985); *see also, Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990).[12] A "lack of RICO standing . . . warrants dismissal . . . for failure to state a claim." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116-17 (2d Cir. 2003). RICO-standing analysis requires a "rigorous" review. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).

A RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation" and the loss is clear and definite. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 767–69 (2d Cir. 1994) (emphasis added & citations omitted).

A RICO plaintiff must show that "the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1317 (1992); *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994) (RICO "limits standing to plaintiffs whose injuries were both factually and proximately caused by the alleged RICO violation." [citations omitted & emphasis added]).

The Supreme Court's seminal decision on RICO standing underscored that "a plaintiff

---

[12]    Statutory "standing" is not a standing issue, "but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citation omitted).

who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. at 268–69, 112 S.Ct. at 1318 (citation omitted). Thus, where plaintiff-insurers alleged that stock manipulators' tortious conduct proximately caused their injuries because the insurers had to pay for their customers' losses, this causal chain failed because the fraud harmed the insurers "only insofar as the stock manipulation first injured the broker-dealers." *Id*. 503 U.S. at 271, 112 S.Ct. at 1319 (emphasis added).

In *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 460-61, 126 S.Ct. 1991, 1998-99 (2006), the Court held that a business could not sue under RICO a tax-evading competitor, whose tax-dodging enabled the competitor to undercut the plaintiff on prices because (in addition to difficulty in calculating damages) "the state government deprived of tax revenue was a more 'immediate victim[ ].'" *Id*. 547 U.S. at 458-60, 126 S.Ct. at 1997-98 (emphasis added).

And in *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 130 S.Ct. 983 (2010), the Court held that New York City could not sue a cigarette company under RICO for failing to provide details of its sales to New York State because the causal connection of a tax evasion scheme was too indirect and the State was "better situated than the City" to sue. *Id*. 559 U.S. at 11-12, 130 S.Ct. at 990 (plurality opinion) (emphasis added).

The Second Circuit specified a two-step inquiry regarding RICO standing: (1) the injury must have been "'proximately caused by a pattern of racketeering activity violating [18 U.S.C.] § 1962 or by individual RICO predicate acts,'" and (2) the RICO predicate acts must directly injure Plaintiffs. *Lerner*, 318 F.3d at 122–23 (citation omitted). The "critical question posed by the direct injury test is whether the damages a plaintiff sustains are derivative of an injury to a third party. If so, then the injury is indirect; if not, it is direct." *Laborer's Local 17 Health and*

11

*Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 238–39 (2d Cir. 1999); *see Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003).

In *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141-46 (2d Cir. 2018), the Second Circuit, following a review of Supreme Court teaching, rejected the RICO claim of an exclusive liquor distributor against out-of-state distributors and retailers. The plaintiff alleged that defendants' smuggling untaxed liquor into New York deprived the plaintiff of sales that as exclusive distributor it otherwise would have made. The *Empire* Court considered whether the link between the injury asserted and the injurious conduct alleged was "too remote," "purely contingent," or "indirect" and whether "more directly injured victims would be better suited as plaintiffs;" it ultimately concluded that the plaintiff's "hypothetical lost sales" were "far less direct than defendants' abrogation of New York State's property interest." *Id*. pp. 141, 145. At bottom, *Empire* held that it is "the most 'immediate victim[ ]'" of the defendants' racketeering that has standing to bring suit. *Id*. p. 146 (emphasis added).[13]

As alleged here in the Complaint, the insurance claim payors (and patients) were directly injured by paying for the alleged overbilling. Complaint ¶¶648-649, 652, 657. Then, Plaintiffs were assertedly injured by purchasing SCAS at an artificially inflated price and by reimbursing, *inter alia*, Medicare. *See e.g., id.* ¶¶652, 657. (Plaintiffs' alleged damages based upon reimbursing Medicare illustrates that Medicare was the "most immediate" alleged victim.).

---

[13]    Other courts have followed similar analyses: A plaintiff lacks standing where its complaint shows others as the primary victim of the predicate fraudulent acts, and plaintiff (a foreseeable target of the acts) only alleges secondary harms (*e.g.,* asset forfeiture). *BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon*, 43 F.Supp.2d 359, 366 (S.D.N.Y. 1999); *see Bona v. Barasch*, 2003 WL 1395932, at *25 (S.D.N.Y. Mar. 20, 2003), *on reconsideration sub nom. Martinez v. Barasch*, 2004 WL 1555191 (S.D.N.Y. July 12, 2004) (insurers suing tobacco companies for increased insured medical expenses of the directly harmed participants are secondary (non-RICO) victims).

Additionally, as alleged, SCAS's value was only overinflated based on the decision of insurers (and patients) to pay on these overbilled claims; Plaintiffs' damages are entirely contingent upon both the actions of and the damages to another class of victim. Even as alleged, Plaintiffs' damages from the racketeering conduct were contingent on damages to other victims.

Thus, the Complaint demonstrates that the claims-payors and patients were the "direct" and "most immediate" victims and first-injured of the alleged predicate acts; Plaintiffs were secondarily injured, indirect victims. And the insurer payors of the claims are "better situated to sue" than Plaintiffs. It follows that the RICO claims should be dismissed.

### ii.    Plaintiffs' Asserted Distinct Injury Does Not Satisfy RICO's Direct Damages Requirement

In *Empire,* the Second Circuit rejected the plaintiff's claim that it satisfied the directness requirement based on its unique injury (stolen sales) contrasted with the injury to the other victim (unpaid taxes). The Court pointedly noted: "this just shows that Empire's injury is *distinct* from New York's, not that its injury was *directly caused* by the defendants' racketeering." *Empire,* 902 F.3d at 145-46 (emphasis in original); *see also, Anza*, 547 U.S. at 460, 126 S.Ct. at 1998 (plaintiff's lost sales damages were insufficient for standing as it was not the immediate victim.).

Here, the Complaint's allegation of Plaintiffs' harm (purchase of SCAS) distinct from that of insurers (paying out claims) and patients (making co-pay payments) does not transform Plaintiffs' alleged injury from indirect and remote to direct or immediate.

### iii.    Plaintiffs' Allegation of an Additional Goal Does Not Satisfy Directness of Damages

The Complaint alleges that Defendants' third goal for overbilling was to sell SCAS at an artificially inflated sales price. Complaint ¶¶89-92.

Apart from the purely conclusory nature of this contention, a complaint cannot ascribe an additional motive for a scheme to elevate a plaintiff's status to a direct and immediate victim. *See Associated Gen. Contractors v. Carpenters*, 459 U.S. 519, 537, 103 S.Ct. 897, 908 (1983) ("an allegation of improper motive [an alleged effort to increase market share to harm competitors] . . . is not a panacea that will enable any complaint to withstand a motion to dismiss.").

In fact, *Empire* rejected the contention that RICO proximate cause analysis can be based on a plaintiff being the "foreseeable[ ] and intended target" rather than "an accidental or incidental one." 902 F.3d at 146. The court held that "foreseeability and intention have little to no import for RICO's proximate cause test."[14] *Id.*

Thus, the Complaint's effort to allege an additional goal of the RICO scheme does not manufacture RICO standing for Plaintiffs. Its intent-based analysis is not only devoid of factual support, but an incorrect basis upon which to support RICO standing. Plaintiffs cannot contrive a motive to transform Plaintiffs into direct victims of the alleged racketeering acts. More aptly, determining the target (intended victim) of the scheme does not show "direct" injury for RICO harm. Thus, Plaintiffs' claim of additional goals does not conjure their RICO standing.

### iv.    The Alleged Breaches of Contract Do Not Add to the Analysis of RICO Standing

Finally, as alleged, the harm to Plaintiffs was caused by the inflated financial information

---

[14]    *Empire* distinguished *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 658, 128 S.Ct. 2131, 2144 (2008), which upheld a RICO claim where competitors improperly submitted bids on auctioned tax liens because plaintiffs' "loss of valuable liens" was "the direct result" of the fraud; there were no independent factors accounting for the plaintiffs' injury, nor was there a "more immediate victim [ ] better situated to sue," as the county was not financially injured by the fraud.

provided by Defendants in connection with Plaintiffs' purchase of SCAS. Where, as here, a

plaintiff's harm was caused by a wrongful act other than by the RICO predicate acts, that

separate wrongful act does not confer RICO standing. *See Beck v. Prupis*, 529 U.S. 494, 494,

120 S.Ct. 1608, 1610 (2000) (no standing where plaintiff's alleged direct injury was wrongful

firing by a RICO enterprise, not by a RICO predicate act, even though the termination was to

preserve the enterprise); *Azima v. Dechert LLP*, 2024 WL 4665106, at *37 (S.D.N.Y. Sept. 26,

2024) (dismissal of RICO claims predicated upon wire fraud by defendants' harming plaintiff to

silence his political views, because, *inter alia*, the harms done to him, closure of bank-accounts,

were caused by the banks' independent decisions to close accounts.).

      Thus, even if Plaintiffs allege that they were wronged by a RICO enterprise and they

suffered damages by the enterprise's commission of a wrongful act in furtherance of its scheme,

if that wrongful act is not a RICO predicate violation, Plaintiffs lack standing.[15] The Supreme

---

[15]    Allegedly wrongful conduct that is not a RICO predicate act does not confer RICO
standing. In *Burdick v. Am. Exp. Co.*, 677 F.Supp. 228, 230 (S.D.N.Y. 1988), *aff'd*, 865 F.2d 527
(2d Cir. 1989), a former employee sued defendant corporation for RICO violations predicated on
wire frauds to induce customers into transactions while improperly withholding interest and
dividends. He claimed his injury, the result of his firing for exposing the scheme, was caused by
the predicate activity as a necessary and contemplated part of the enterprise's activity. The court
found the harm from the firing not caused by the predicate acts and dismissed the complaint. *See
O'Callaghan v. New York Stock Exch.*, 2013 WL 3984887, at *14 (S.D.N.Y. Aug. 2, 2013), *aff'd*,
563 F.App'x 11 (2d Cir. 2014) (court denied RICO claims of former employee, who alleged he
was investigated, disciplined, and terminated to silence him from revealing insider trading
enterprise, because there was no "direct relation" between the insider trading and his injury);
*Giuffre v. Metro. Life Ins. Co.*, 129 F.R.D. 71, 75 (S.D.N.Y. 1989) (dismissing RICO claims of
former employee, who alleged he was terminated as part of a scheme with two purposes, to
defraud policyholders and reduce larger sales commissions like his; notwithstanding that his
termination was a foreseeable wrong, he was not the targeted class); *see also, Haviland v. J.
Aron & Co.*, 796 F.Supp. 95, 100 (S.D.N.Y. 1992), *aff'd*, 986 F.2d 499 (2d Cir. 1992) (no RICO
standing for former employee fired for refusing to tolerate RICO-predicate corporate
misrepresentations to clients; regardless of his creative pleading, as he was not the direct target
of the RICO predicate acts).

Court explained, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct," *Sedima*, 473 U.S. at 496-97, 105 S.Ct. at 3285, but only to those injuries caused "by reason of" a §1962 violation. (citation & internal quotation marks omitted).

Here, as alleged, after Defendants allegedly defrauded insurers and patients, Defendants presented inaccurate financial information and false representations of Defendants' compliance with the applicable law in connection with an alleged breach of contract. Complaint ¶¶659-665. Plaintiffs were not harmed by the alleged predicate wire frauds upon insurers, but rather by an independent act of breach of contract. In sum, Plaintiffs' alleged damages were not directly or proximately caused by the enterprise's alleged racketeering acts.

Thus, the RICO causes of action should be dismissed because Plaintiffs did not adequately allege proximate causation and lack standing to sue under RICO. None of the Complaint's pale efforts to disguise the facts can animate chimeric RICO claims.

"[A]s courts in this Circuit have cautioned, a plaintiff cannot turn a state law tort, fraud or contract claim into a RICO claim by merely labeling it RICO." *Spiteri v. Russo*, 2013 WL 4806960 at *50 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F.App'x 9 (2d Cir. 2015) (citation omitted).[16]

---

[16]    Also notably, Plaintiffs claims are not ripe because they did not exhaust their state law remedies that might redress their injuries. "A plaintiff can only pursue RICO claims after it has 'exhausted the bargained-for remedies available to it ... and then only to the extent of the deficiency.' . . . State law remedies must be pursued and exhausted even if collecting on them is a 'forlorn hope.'" *Premium Merchant Funding 18, LLC v. Honan*, 2024 WL 4931940, at *2 (S.D.N.Y. Dec. 2, 2024) (RICO claim dismissed for, inter alia, lack of ripeness for failure to bring state court contract claim) (citations omitted); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) (plaintiff "can only pursue the RICO treble damages remedy after his contractual rights to payment have been frustrated").

3.    **The Complaint's Claims Are a Disguised Securities Fraud Allegation, Not Permitted for RICO Claims, Requiring Dismissal of those Claims**

The Court should dismiss the RICO claims because allegations sounding in securities fraud, like the one in the Complaint (contorted into wire fraud), cannot be the basis for a RICO claim.

i.    **Securities Transactions Cannot Be RICO Predicate Acts**

A plaintiff may not "rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. §1964(c). This provision prevents "litigants from using artful pleading to boot-strap securities fraud cases into RICO cases." *MLSMK Inv. v. JP Morgan Chase & Co*., 651 F.3d 268, 274 (2d Cir. 2011) (citation omitted); *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F.Supp.2d 267, 281 (S.D.N.Y. 2009). Thus, other predicate acts (such as wire fraud) may not be pleaded in a civil RICO complaint in furtherance of conduct otherwise actionable as securities fraud. *Jordan (Bermuda) Inv. v. Hunter Green Inv*., 205 F.Supp.2d 243, 248 (S.D.N.Y. 2002).

Whether a RICO claim is based in securities fraud depends on if the fraudulent conduct is "in connection with the purchase or sale of any security." 15 U.S.C. §78j(b); *see Levinson v. PSCC Servs., Inc.*, 2009 WL 5184363, at *6 (D. Conn. Dec. 23, 2009).[17] The Supreme Court has defined "'in connection with' very broadly to encompass a 'fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide.'" *Levinson*, 2009 WL 5184363,

---

Plaintiffs' failure to "'demonstrate that the orthodox methods of recovery have failed them' before they can allege that acts of racketeering caused them loss" requires dismissal of the RICO claims. *See Premium Merchant*, 2024 WL 4931940, at *2 (citations omitted).

[17]    Securities Exchange Act of 1934 §10(b) provides guidance on what conduct constitutes securities fraud with regard to the RICO Amendment. *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F.Supp.3d 634, 644 (S.D.N.Y. 2017).

at *6 (citation omitted). An action premised upon reliance on misrepresentations as to a security's value is "in connection with" securities fraud. *Stechler v. Sidley, Austin Brown & Wood, LLP*, 382 F.Supp.2d 580, 594 (S.D.N.Y. 2005), *quoting Araujo v. John Hancock Life Ins*., 206 F.Supp.2d 377, 383 (E.D.N.Y. 2002).

If "one predicate act alleges breaches of duty coincident with securities transactions then the whole scheme is subject to the [RICO Amendment]." *Ling v. Deutsche Bank*, 2005 WL 1244689, at *4 (S.D.N.Y. May 26, 2005). In other words, when "any predicate act is barred by the PSLRA it is fatal to the entire RICO claim." *Zanghi v. Ritella*, 2021 WL 4392756, at *16 (S.D.N.Y. Sept. 24, 2021) (citations omitted).

In *Stevenson v. Thornburgh*, 2024 WL 645187, at *18–19 (S.D.N.Y. Feb. 14, 2024),[18] plaintiffs alleged the RICO predicate acts as breaches of statutory duties, mismanagement, and fraud (*e.g.*, bank fraud). However, the court rejected plaintiffs' attempt to detour the RICO securities fraud bar because the core alleged fraud was based on defendants misrepresenting delinquency data, depriving investors of information about the investments, which necessarily involved a sale of securities, and the damages were connected to the value of their securities. *Id*. pp. 19-22. Thus, even if a complaint attempts to circumvent the bar, courts examine the underlying basis of the complaint to determine whether it was applicable.

### ii.    The Core Allegation, Albeit Unalleged, Is Securities Fraud

As described above, the underlying basis of the Complaint is that Defendants misrepresented the value of SCAS in connection with the Agreement. The Agreement was a

---

[18]    In *Stevenson*, plaintiffs brought class action claims on behalf of a class of corporate-plaintiff-shareholders against numerous parties, including multiple KPMG employees. Plaintiffs' RICO claims involved KPMG's cooperation in facilitating decades of mismanagement. *Id*.

securities transaction in two ways: (1) Plaintiffs' transfer of stock and (2) Defendants' sale of SCAS.

First, where a securities transfer is integral to a transaction, it is subject to securities regulation. *In re Platinum-Beechwood Litig*., 377 F.Supp.3d 414, 426 (S.D.N.Y. 2019) (RICO claim barred for securities ties where reinsurance company funneled insurer's assets into securities.). Here, Plaintiffs conveyed FPHL membership interests as a core element of the consideration in connection with the Agreement's transaction, rendering it a securities transaction. An alleged fraud in connection with that transaction would amount to an allegation of securities fraud.

Perhaps more importantly, the asset-purchase of SCAS was, in practice, a purchase of a security interest in SCAS. A security in this context is not determined by how a transaction is titled, but rather by the factors in *SEC v. W.J. Howey Co*., 328 U.S. 293, 66 S.Ct. 1100 (1946): (1) a financial investment; (2) in a common enterprise; (3) with expectation of profits; and (4) investors are not responsible for earning the profits. If a buyer acquires assets with an expectation of profits that depend on the seller's continued efforts (*e.g.,* ongoing rendering of services and management and patient referrals), then the transaction is treated as a securities investment. *See W.J. Howey*, 328 U.S. at 293, 66 S.Ct. at 1100 (sale of orange groves was investment contract); *SEC v. Edwards*, 540 U.S. 389, 397, 124 S.Ct. 892, 899 (2004) (even fixed rate of return does not preclude "investment contract"); *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027 (2d Cir. 1974) (whiskey warehouse receipt-sale was securities transaction); *SEC v. Coinbase, Inc*., 726 F.Supp.3d 260, 303 (S.D.N.Y. 2024) (cryptocurrency sale was a securities sale where promoter maintained significant managerial responsibilities).

19

Here, while the Agreement was couched as an asset sale, not a sale of SCAS or its security interests, the original complaint freely admitted that it was a purchase of SCAS.[19] Moreover, the rights and obligations that comprised the terms of the Agreement reflected a sale of securities; the Individual Defendants would service and manage the acquired business, (*see* Complaint ¶¶557, 674, Dr. Vergilis's continued compensation was based on SCAS's profits) for Plaintiffs-investors' benefit and profit. *See id.* ¶623. Thus, it meets the *Howey* test, as a securities transaction.

Finally, to the extent Plaintiffs allege they were victims of Defendants' fraud (the Complaint avoids a common law fraud claim) via RICO, such allegation is based on the inflated price of SCAS. *See e.g., id.* ¶93. Thus, that allegation is securities fraud in the guise of wire fraud and cannot be a RICO predicate. It follows that the RICO claims should be dismissed.

### 4.    Plaintiffs Do Not Adequately Allege a §1962(d) RICO Conspiracy

The Complaint's failure to plead an underlying substantive RICO claim requires its RICO conspiracy claim to fail as well. "Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 must fail if the substantive claims are themselves deficient." *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128, 119 S.Ct. 493 (1998); *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 164, 182 (2d Cir. 2004)(RICO conspiracy claim dismissed "because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims"); *Knoll v. Schectman*, 275 F.App'x 50, 51 (2d Cir. 2008); *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL

---

[19]    *See* Original Complaint ¶297 ("Plaintiffs and SCAS negotiated the purchase price of SCAS.") & ¶324 ("Based on the false and fraudulent financial figures and income statements that Defendants provided, Plaintiffs agreed to purchase SCAS…").

1298987, at *12 (S.D.N.Y. Mar. 31, 2016); *Reich v. Lopez*, 38 F.Supp.3d 436, 453 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017).

Even if Plaintiffs had adequately stated an underlying substantive RICO violation to support a RICO conspiracy claim, the RICO conspiracy claim also fails because "the Complaint in this case, while expansive in length, contains only conclusory allegations that the defendants agreed among themselves to violate RICO." *JGIAP RH 160 LLC v. CRI Holding Corp.*, 2023 WL 5979125, at *17 (E.D.N.Y. Aug. 16, 2023), *r&r adopted*, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023).

"[A]llegations may not be conclusory, [and] must set forth specific facts tending to show that each of the defendants entered into an agreement <u>to conduct the affairs of a particular, identified enterprise through a pattern of racketeering activity</u>—not simply that each defendant committed two or more acts that would qualify as predicate acts..." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.Supp.2d 297, 313 (S.D.N.Y. 2010) (emphasis in original); *see also, Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F.Supp.2d 253, 272 (S.D.N.Y. 2006) ("While [plaintiff] repeatedly states that defendants 'conspired' or 'agreed' with one another, the complaint fails to set forth sufficient facts to suggest how each of the defendants, through words or actions, reached an agreement.").

The generic agreements the Individual Defendants allegedly entered into do not establish any agreement to conduct the affairs of a particular, identified enterprise, let alone through a pattern of racketeering activity. *See Elsevier*, 692 F.Supp. at 313. At most, the Complaint alleges that the Individual Defendants independently made decisions for their own business interests—not pursuant to any RICO enterprise, and much less, pursuant to any agreement to conspire with all members of the purported enterprise.

21

Plaintiffs also fail to set forth any well-pleaded allegations of predicate racketeering acts that each of the Individual Defendants agreed to commit, which is fatal to their RICO conspiracy claim. *See Bonadio v. PHH Mortg. Corp.*, 2014 WL 522784, at *3 (S.D.N.Y. Jan. 31, 2014) (RICO conspiracy claim failed because "the amended complaint does not identify any predicate acts [that other RICO] conspirators agreed to commit.")

Finally, even if Plaintiffs contend that Dr. Vergilis knew about the purported misrepresentations that are ascribed to Kalyuzhny as part of the alleged scheme, "[m]ere knowledge of a scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy." *In re Platinum-Beechwood Litig.*, 427 F.Supp.3d 395, 439 (S.D.N.Y. 2019); *see also, Nasik Breeding & Research Farm v. Merck & Co.*, 165 F.Supp.2d 514, 541 (S.D.N.Y. 2001).

Thus, the RICO conspiracy claim should be dismissed.

**C.    COMMON LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM (REGARDING CLAIMS 3-8)**

**1.    New York Does Not Recognize Civil Conspiracy Claims (CLAIM 7)**

The civil conspiracy cause of action should be dismissed. "[A] mere conspiracy to commit a tort is never of itself a cause of action . . . Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) (fixed up); a*ccord, Legion Lighting Co. v. Switzer Grp., Inc.*, 171 A.D.2d 472, 473 (1st Dept. 1991) (New York does not recognize an independent cause of action for civil conspiracy); *Plymouth Drug Wholesalers, Inc. v. Kirschner*, 239 A.D.2d 479, 479 (2d Dept. 1997); *Reich*, 38 F.Supp.3d at 460 (same);

*Decter v. Second Nature Therapeutic Program*, LLC, 42 F.Supp.3d 450, 463 (E.D.N.Y. 2014) (same).

Thus, Plaintiffs' cause of action for civil conspiracy against Dr. Vergilis and Kalyuzhny – the seventh claim – should be dismissed.

### 2.    The Claims for Breach of a Fiduciary Duty Should Be Dismissed (CLAIMS 5-6)

A breach of fiduciary duty claim must allege facts showing: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776, 777 (2d Dept. 2010) (internal citations omitted).

#### a.    The Claim for Violation of Her Fiduciary Duty Against Dr. Vergilis (CLAIM 5) Should Be Dismissed

Courts dismiss tort claims that are duplicative of breach of contract claims, *i.e.,* when the claim is based on the same underlying facts or where the damages sought are the same. *See, e.g., Pollak v. Moore*, 85 A.D.3d 578, 579 (1st Dept. 2011) (plaintiff's alternative claims for breach of fiduciary duty, fraud, and negligent misrepresentation were duplicative of breach of contract claims and dismissed) (citations omitted); *Veritas Capital Mgmt. L.L.C. v. Campbell*, 22 Misc.3d 1107(A) (Sup. Ct. N.Y. Cty. 2008); *Hylan Electrical Contracting, Inc. v. MasTec North America, Inc.*, 74 A.D.3d 1148, 1149 (2d Dept. 2010) (dismissing breach of fiduciary duty cause of action as duplicative of breach of contract claim); *Kaminsky v. FSP Inc.*, 5 A.D.3d 251 (1st Dept. 2004) (same).

Where the cause of action for breach of contract refers to the same alleged wrongful conduct as alleged with respect to the breach of fiduciary duty claim, the breach of fiduciary duty cause of action is duplicative and subject to dismissal. *William Kaufman Org., Ltd. v. Graham &*

23

*James LLP*, 269 A.D.2d 171, 173 (1st Dept. 2000).

The breach of contract claim against Dr. Vergilis based on her employment agreement alleges that "Dr. Vergilis breached the Employment Agreement in multiple ways, including by continuing to engage in coding and billing fraud after she entered into the Employment Agreement, in violation of multiple laws, Forefront employment policies applicable to physician-employees, and reasonable directions and orders of Forefront." Complaint ¶670. In turn, the fifth cause of action alleges that Dr. Vergilis breached her fiduciary duty "by engaging in the fraudulent billing scheme . . ." *Id*. ¶674.

Moreover, the alleged recoverable damages are the same. Both seek consequential damages (*see id.* ¶¶671, 674) and while the Complaint seeks to carve out "faithless servant" (recapture of compensation) damages from the contract claim, and add them to the breach of fiduciary duties claim, those damages are recoverable in contract. *See Carco Grp., Inc. v. Maconachy*, 718 F.3d 72, 84 (2d Cir. 2013) ("We reject Maconachy's premise that a faithless servant claim is not a contract claim."). And while the breach of fiduciary duties claims add a boilerplate demand for punitive damages, the Complaint's allegations do not reach the "exceptional misconduct" standard supporting such a claim. *Chauca v. Abraham*, 30 N.Y.3d 325, 331 (2017); *see also*, pp. 27-28 below.

Thus, the breach of fiduciary duty cause of action—the fifth claim—against Dr. Vergilis should be dismissed as duplicative of the breach of contract claim.

      **b.**      **The Claims for Violations of Fiduciary Duties Against Dr.**
                    **Vergilis and Kalyuzhny (CLAIMS 5-6) Should Be Dismissed**

The claims for breach of fiduciary duty allege that fraudulent billing occurred after Defendants' employment beginning November 2022.

Causation of pecuniary damages is an element of a breach of fiduciary duty claim. *McSpedon v. Levine*, 158 A.D.3d 618, 622 (2d Dept. 2018); *DeMartino v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 189 A.D.3d 774, 775 (2d Dept. 2020) (complaint must allege facts demonstrating that plaintiff was "directly damaged by the defendants' alleged breach of their fiduciary duty"); *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 808 (2d Dept. 2011) (same; no actual financial loss was sustained). In *Rut*, 74 A.D.3d at 776-77, the claim was dismissed where plaintiff-beneficiary of a trust alleged that trustees agreed to acquire an annuity and had not done so, but failed to allege that damages had occurred.

Here, the Complaint alleges that "Kalner [Kalyuzhny] breached those fiduciary duties by engaging in the fraudulent billing scheme as a way to increase SCAS's putative profits and Dr. Vergilis's compensation. The scheme was, thus, a way that Kalner embezzled <u>or attempted to embezzle</u> funds." Complaint ¶674 (emphasis added); *see also*, ¶679. "[E]mbezzled <u>or attempted to embezzle</u> funds" is not a statement claiming injury; in fact, it is an admission of an inability to establish that injury, as is borne out by the Complaint itself.[20]

---

[20]      Embezzlement entails conversion of property entrusted to the embezzler to hold on behalf of the owner. *Recovery Racing, LLC v. Abate*, 16 Misc.3d 1122(A), 2007 WL 2302451, at *4 (Sup. Ct. Nassau Cty. 2007) *citing People v. Yannett*, 49 N.Y.2d 296, 301 (1980). The Complaint does not allege that the Individual Defendants were entrusted with any property belonging to FML, let alone that they misappropriated any specific property. Rather, it merely alleges that they violated corporate policy, and "attempted" to artificially increase corporate income (along with Dr. Vergilis's income). Complaint ¶¶352, 428, 430.

The Complaint itself confirms that no funds were "embezzled." Dr. Vergilis was entitled to a fixed "draw" amount, which was set at $500,000 per year. *See* Complaint Exhibit 2. Her employment began on November 19, 2022, and terminated on August 15, 2023, a period just short of nine months. Complaint ¶575. The compensation that she received, $369,320.78 (*id.* ¶621) corresponds with her "draw" compensation for that period just short of three quarters of a year.[21]

Instead, the Complaint inaptly poses the "faithless servant" doctrine. *See id.* ¶¶676, 681. The doctrine requires: a duty of fidelity to a principal; misconduct and disloyalty that substantially affects the contract of employment; a demonstration of a persistent pattern of disloyalty; and an "employee's misuse of the employer's resources to compete with the employer is generally required." *AA Med., P.C. v. Keane*, 83 Misc.3d 133(A), 2024 WL 4096659, at *3 (2d Dept. 2024). In *Beach v. Touradji Cap. Mgmt., LP*, 224 A.D.3d 470, 471 (1st Dept. 2024), plaintiff failed to allege that employee acted "directly against the employer's interests-as in embezzlement, improperly competing with the current employer, or usurping business opportunities…" (citations omitted).

Here, the Complaint does not allege that Kalyuzhny or Dr. Vergilis was competing with (or supporting competitors of) Plaintiffs. In fact, the Complaint alleges that Kalyuzhny's and Dr. Vergilis's wrongful (post-Agreement) activities were "a way to increase SCAS's putative profits" (Complaint ¶679), which would increase Plaintiffs' income.[22] This alleged activity is not

---

[21]    The Complaint also alleges as phantom damages that Plaintiffs reimbursed Medicare for funds that the Plaintiff had earlier received. *See id.* ¶675.

[22]    *See* Complaint ¶¶13, 297, "The business that Plaintiffs had acquired was essentially worthless and could not continue as a going concern." In the Agreement, Plaintiffs received, *inter alia*, "all goodwill and the going concern value" of SCAS, which reflects the future revenue

the type of disloyalty contemplated by the "faithless servant" doctrine.

Further, Plaintiffs are only entitled to recover a faithless servant's compensation during the time of faithlessness (*i.e.,* the days in which the alleged embezzlement occurred), and here there is no indication, when, if at all, the Individual Defendants were allegedly "embezzling." *See Herman v. Branch Motor Exp. Co.*, 67 Misc.2d 444, 445 (Civ. Ct. N.Y. Cty. 1971). Based on these insufficient allegations, the breach of fiduciary claims should be dismissed.

### 3.    The Declaratory Judgment Claim Is Duplicative (CLAIM 8)

A declaratory judgment claim that is duplicative of its breach of contract claim, should be dismissed. *See Optanix, Inc. v. Alorica Inc.*, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) ("Courts reject declaratory judgment claims 'when other claims in the suit will resolve the same issues,' because, under such circumstances, a declaratory judgment will not serve any useful purpose." [citation omitted]). Here, Plaintiffs seek remediation for the alleged breach of contract, *i.e.,* return or forfeiture of the consideration that they paid, which can adequately be addressed by the breach of the Agreement claim. *Compare* Complaint ¶665 & ¶692. Thus, the declaratory judgment claim is redundant and should be dismissed.

### 4.    Striking Damage Requests

The Complaint demands multiple forms of damages for which Plaintiffs are not entitled to recovery.

#### i.    Plaintiffs Are Not Entitled to Punitive Damages (CLAIMS 5-7)

The Complaint demands punitive damages pursuant to the two breach of fiduciary duty claims, and the civil conspiracy claim, (Complaint ¶¶675, 681, 686) but Plaintiffs are not entitled to recover for punitive damages.

---

of SCAS. Complaint, Exhibit 1, p. 1.

"[P]unitive damages are available for the purpose of vindicating a public right only where the actions of the alleged tort-feasor constitute gross recklessness or intentional, wanton or malicious conduct aimed at the public generally or are activated by evil or reprehensible motives." *Thomas v. Farrago*, 154 A.D.3d 896, 898 (2d Dept. 2017) (citations omitted). "Mere commission of a tort, even an intentional tort requiring proof of common law malice, is insufficient; there must be circumstances of aggravation or outrage, or a fraudulent or evil motive on the part of the defendant." *Emmet & Co. v. Catholic Health E.*, 49 Misc.3d 1058, 1074 (Sup. Ct. N.Y. Co. 2015) (citations omitted). The conduct alleged does rise to the applicable standard for punitive damages, and these demands should be dismissed.

### D.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

As shown above, the RICO claims should be dismissed under Rule 12(b)(6), thereby undermining the Plaintiffs' attempt to invoke subject matter jurisdiction under 28 U.S.C. §1331. Plaintiffs now claim that this Court has subject matter jurisdiction under 28 U.S.C. §1332 based upon diversity of citizenship, but that claim (not alleged in the original complaint) is untenable.[23]

First, Plaintiffs, three limited liability companies, are required to "name—and identify the citizenship of—every individual or entity whose citizenship is attributed to" them in the supplemental disclosure required under Fed.R.Civ.P. 7.1(a), in order to establish diversity jurisdiction.

Limited liability company plaintiffs "must allege the identity and citizenship of their

---

[23]    Plaintiffs' request for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "does not create subject matter jurisdiction but simply creates a federal remedy." *Salvatore's Italian Gardens, Inc. v. Hartford Fire Ins. Co.*, 547 F.Supp.3d 299, 303 (W.D.N.Y. 2021) (citation omitted).

members, <u>proceeding up the chain of ownership</u> until it has alleged the <u>identity and citizenship of</u>

<u>every individual and corporation with a direct or indirect interest in the LLC</u>. In the absence of

such information, all that plaintiff has alleged are conclusions without the facts to support them."

*United States Liab. Ins. Co. v. M Remodeling Corp*., 444 F.Supp.3d 408, 410 (E.D.N.Y. 2020)

(emphasis added); *Kenshoo, Inc. v. Aragon Advert*., LLC, 586 F.Supp.3d 177, 184 (E.D.N.Y.

2022) ("An allegation of 'citizenship' is not a 'fact.' It is a legal conclusion built upon another

legal conclusion, domicile, which is determined by considering a number of facts…"); *see also*,

*A Priori Fam. Off., LLC v. Valley Forge Ins. Co.*, 2023 WL 8188668, at *1 (D. Conn. Nov. 27,

2023).

        Here, Plaintiffs did not provide the names of every individual in the chain of ownership

or provide their domicile information. *See* Complaint ¶¶32-34. Moreover, the Complaint's

allegations with respect to Forefront Holdings (*id*. ¶34) trails off inconclusively. While noting

that Forefront Holdings has numerous "entity members," some of whom are limited liability

companies, trusts and other non-incorporated entities, it concludes that none of these "entity

members" are citizens of New York, but does not, as required, further describe the citizenship of

each of the owners or members of these "entity members." *United States Liab.*, 444 F.Supp.3d at

410.

        Thus, Plaintiffs failed to meet this requirement.

        Second, complete diversity is lacking in this case. The core principles underlying

diversity jurisdiction are well established. In addition to complete diversity of citizenship at the

time the action is commenced,

    -      The citizenship of an LLC "is determined by reference to the citizenship of its

           members." *Catskill Litig. Trust v. Park Place Entm't Corp.*, 169 F. App'x 658, 659

(2d Cir. 2006); *see also Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d

48, 51-52 (2d Cir. 2000).[24]

- A <u>plaintiff "bears the burden of demonstrating that the grounds for diversity exist</u>

and that diversity is complete." *Advani Enterprises, Inc. v. Underwriters at*

*Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) (emphasis added); *Pennsylvania Pub.*

*Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 118 (2d

Cir. 2014).

"The[ ] requirements [of diversity jurisdiction], however technical seeming, must be

viewed in the perspective of the constitutional limitations upon the judicial power of the federal

courts .... The dominant note in the successive enactments of Congress relating to diversity

jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of

relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to

the state courts' in order to keep them free for their distinctive federal business." *Hoosick Falls*

*Assoc. v. St.-Gobain Performance Plastics Corp.*, 2016 WL 9995519, at *4 (N.D.N.Y. Oct. 31,

2016) (citation omitted).

Turning to our case, the Complaint acknowledges that SCAS was a member of FPHL.

Complaint ¶¶8, 526 ("Plaintiffs agreed to pay SCAS . . . 50,000 Class B Common Units in

Forefront Holdings representing a value equal to $5,000,000 that Forefront Holdings issued to

SCAS.").

The Complaint asserts that allegedly "with cause," "Forefront Holdings cancelled the

50,000 Class B Common Units that it had issued to SCAS as consideration under the Purchase

---

[24]     For diversity purposes, the state in which an LLC was formed, or has its headquarters, is
irrelevant. *See Kelly v. Vesnaver*, 2018 WL 1054827, at *3 & n.3 (E.D.N.Y. Jan. 11, 2018).

Agreement." *Id.* ¶633. It then declares, unilaterally, that "As a result, SCAS is no longer a member of Forefront Holdings, and its books and records do not list SCAS (or Dr. Vergilis) as a member." *Id.* ¶634.[25]

The Complaint accurately asserts that "Forefront Holdings, Dr. Vergilis, and SCAS are embroiled in a substantial controversy, and they have adverse legal interests." *Id.* ¶688. And that "Dr. Vergilis and SCAS's position, on information and belief, is that the cancellation of SCAS's Class B Common Units was not proper and valid and that SCAS remains a member of Forefront Holdings." *Id.* ¶690.

Plaintiffs seek a judgment at the conclusion of this case: "Declaring that Forefront Holdings' cancellation of SCAS's Class B Common Units was proper and valid and that SCAS is no longer a member of Forefront Holdings." *Id.* ¶692.

The Complaint itself acknowledges that the crux of this case—and determinant of SCAS's membership and citizenship and of this Court's diversity jurisdiction—is whether the Defendants breached the Agreement and the employment agreement, and whether the Plaintiffs were justified in unilaterally cancelling SCAS's membership interest.

But that will be determined upon resolution of this case. In pleading, in effect, that <u>maybe</u> this Court has diversity jurisdiction (if Plaintiffs' self-help unilateral uncompensated "cancellation" of SCAS's membership interest is upheld), and <u>maybe</u> the Court never had jurisdiction in the first place (if Plaintiffs improperly cancelled Defendants' membership

---

[25]     Such a unilateral revocation effort does not automatically terminate membership. *See Total Auto., Inc. v. Supply Line Int'l, LLC*, 2016 WL 7476337, at *4 (D. Minn. Dec. 29, 2016) (plaintiff terminated a member's employment and unilaterally deprived member of rights, but that did not revoke the member's status and the action was remanded for lack of complete diversity.).

interests), Plaintiffs have not met their burden to establish diversity jurisdiction.

"[W]hen the citizenship of an LLC or LP is in question, a district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction." *Platinum-Montaur Life Scis., LLC,* 943 F.3d at 619 (2d Cir. 2019) (notwithstanding that "scrupulous enforcement of these jurisdictional rules may make it more difficult for many business entities to sue or to be sued in federal court under diversity jurisdiction. . . . when the citizenship of an LLC or LP is in question, a district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction."); *Thor Equities, LLC v. Hiscox Ins. Co. Inc*., 2022 WL 5196111, at *2 (S.D.N.Y. Oct. 5, 2022); *Corniel v. Titech,* 2020 WL 1480448, at *5 (E.D.N.Y. Mar. 6, 2020), *r&r adopted*, 2020 WL 1472442 (E.D.N.Y. Mar. 26, 2020). Since the issue of SCAS's membership status is not yet decided, and will not be decided until this case is over, Plaintiffs have not established jurisdiction.

If mispleading is not discovered until after final judgment, then the judgment may be attacked as void under Fed.R.Civ.P. 60(b)(4). *See, e.g., Thermoset Corp. v. Building Materials Corp of America*, 849 F.3d 1313 (11th Cir. 2017); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017) ("It is in everyone's best interest, both the litigants' and the courts', to verify that diversity jurisdiction exists before proceeding with the case.").

Since Plaintiffs cannot establish SCAS's lack of FPHL membership absent resolution of the entire action, the Court should reject Plaintiffs' claim of diversity jurisdiction. It is not a "tragedy or violation of any fundamental right that plaintiff has to have its claim determined in state court." *United States Liab. Ins. Co.,* 444 F.Supp.3d at 410.

E.    **THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS THE STATE LAW CLAIMS (CLAIMS 3-8)**

In deciding whether to exercise supplemental jurisdiction, the Court must "weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants." *First Capital*, 385 F.3d at 183, *quoting Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). In applying these factors, the Second Circuit has counseled that, "[i]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*, *quoting Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991); 28 U.S.C. §1367(c).[26] Here, absent the RICO claims and absent diversity of citizenship, the only bases for federal jurisdiction, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the Complaint, and afford Defendants such other and further relief as it deems just and fair.

Dated: New York, New York
      February 7, 2025

Respectfully submitted,

**JACOB LAUFER, P.C.**

By:   /s/ Jacob Laufer
      Jacob Laufer, Esq.
      Mark Ellis, Esq.

---

[26]    "[A]fter all federal claims have been dismissed, the default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017); *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013) ("Once all federal claims have been dismissed, the balance of factors will usually point toward declination."); *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.")

Meryl Goldberg, Esq.
65 Broadway, Suite 1005
New York, New York 10006
(212) 422-8500
(212) 422-9038 (fax)

Richard S. Harrow, Esq. (of Counsel)
O'Connell & Aronowitz
54 State Street
Albany, New York 12207
(518) 462-5601

*Attorneys for Defendants Irene J. Vergilis-Kalner, Arkady Kalyuzhny, and Skin Cancer & Aesthetic Surgery, P.C.*

To:
Clerk of the Court (via ECF)
All Counsel (via ECF)

34